May it please the court, Nicholas Markey on behalf of Julian Solorio-Valdez counsel. Your honors, this is a single-issue case. Mr. Solorio-Valdez maintains that there was insufficient evidence to convict him of manufacturing marijuana. Your honor, the simple facts of the case is that the government failed to produce that he manufactured marijuana. If we go through the record it's clear that Mr. Solorio was on the property. He admitted to being on the property, admitted to being there for approximately two and a half weeks. He admitted to mowing. When he was on the property he was cultivating what was growing there, right? I agree with that. And what were the hours that he was working? Your honor, he was apparently at the property anywhere from I believe 6 a.m. to 5 p.m. a day. So he's working long hours on the property and there were more than 5,000 marijuana plants there, right? That's correct, your honor. So couldn't a jury, I mean given that the standard is what could a rational jury find elements beyond a reasonable doubt? Couldn't from the extent of the marijuana and the extent of time he spent cultivating what was growing, you know, with the grapes and whatever else was there, couldn't a rational jury conclude that he knew there was marijuana there and that he was helping to grow it? I suppose you could argue a rational jury could. In this case, I would submit they couldn't because there was not enough evidence that he was manufacturing the marijuana. The court... Well wait, why did the government have to prove that he was acting with the intent, specific intent to manufacture marijuana? Yes, your honor. And what the government proved was that he knew there were marijuana plants amidst the vineyard. That's correct. And that he operated a tractor. So really to me what this comes down to is evidence, does evidence of knowledge, is evidence of knowledge that the plants were there in fields that he operated a tractor on sufficient to establish his intent to manufacture? That's our position, your honor. I know your position. Right. So explain to me why that's your position, why you think that showing knowledge is insufficient to show intent under this statute. Well, your honor, I think if you take it to that extent that knowing knowledge is intent to manufacture, you can apply that to almost anything. For example, is the trails and the roads in a state park and they find 5,000 marijuana plants and he has seen them there, because he knows they're there, is he guilty of manufacturing? Why don't you take the hypothetical more of the facts of this case? Well, it's the same thing. Say the person spends 10 hours a day pouring water on top of the plants. Is his intent to maintain the plants, the marijuana plants? No, your honor. His intent is to maintain the vines, mow the tractor, fix the fence poles. The fact that the marijuana is there, is it his intent to manufacture it? Is he told, listen, you're going to manufacture this marijuana by maintaining, by making sure they're watered? If we take that through, your client can and probably did present to the jury, right? The question that we have is, could a rational jury reject it and say that given the number of plants, the number of hours he spent and what he was doing, that he knew he was helping to grow marijuana? But what I'm saying, your honor, is the government didn't prove that he knew he was cultivating the marijuana. He was not convinced. He would know if you pour water on a plant, it helps it grow. I understand that, your honor. So, I mean, isn't really, isn't the question whether a rational jury could think that he knew he was helping to cultivate and water, including where there was marijuana, or is that not enough? No, because if we say that he knew that he was cultivating it, there was no evidence presented that he knew that he was cultivating it. I concede, your honor, that, yeah, I got a problem. He's spraying water on these plants all day long. He's mowing between them. Yeah, is there going to be a benefit to the marijuana plants that are under the vines? He didn't put them there, but is there going to be? Okay, was there any evidence that he planted plants? No, there's simply no evidence whatsoever that he ever planted the plants. So, was there any evidence around the circumstances of his getting the job on Vineyard? There was no evidence other than he was employed by either Andrew Schmidt or this other individual to mow between the vines, fix the fences, and water. Was there evidence as to where the plants exactly were located? I mean, were they under the vines so that no one flying a VAB or could see? Exactly. I mean, they were hidden under the vines? There was, your honor. Was that evidence in the record? That is evidence in the record because it was a videotape that was provided by the government. The government's agent testified that they took video plates of where they found the plants and where they were pulled up. What the videotape shows, your honors, is that the plants are under the vines, and these are fully developed vines. So, if you're flying above, you don't see the plants, the marijuana plants. Someone planted them there with the design that they would be undiscoverable because the vines would bite them. Yes, but there's no evidence. Undiscoverable by surveillance from the air. Right. Was there evidence that they're not discoverable by the guy who's watering them? The answer must be no because he said he knew they were there and he ran when the cops came. There's no question he knew the plants were there. That's not the question. We can say, at this point, he was asked, did you see the he's pouring water on top of marijuana plants? Why couldn't a rational jury say if a person knows that they're putting water on top of a marijuana plant that is in the earth and that gets sunlight, that's helping it to grow? I think you've got it. If we take that analogy... My question is why couldn't a rational jury frame it in just as you might have a challenge to argue this argument to us that the jury has rejected, we might have a challenge if we were to write that a rational jury couldn't decide he cultivated in terms of how the Supreme Court would look at Jackson v. Virginia. Back in Illinois, we call this the Magoopin County Rule. Everybody knows. Everybody knows. Everybody knows. I guess my problem with saying that a rational jury can find it because he knew the marijuana was there, even though he didn't have anything to do with it. He put the water on it and it supplied the marijuana. I guess, could a rational jury find that he was manufacturing it? Possibly. In this context, doesn't manufacturing include, by definition, making it grow? Yes, it does, Your Honor. But does that mean he had the intent to manufacture the marijuana when he was merely doing his job? Again, we have an employee just doing his job. Did you put in evidence? I'm really struggling with this. I've really struggled with it because it seems like some really critical evidence is missing. What was he hired to do? I can see a scenario where somebody desperate for work is going to be hired as a day laborer and farmhand and go there and say, oh, there's marijuana plants here. Oh, well, I'm going to keep this job. I'm just going to water everything and just keep my mouth shut, look the other way, whatever. Is that enough to say he intended to manufacture those plants that were there? Should you have put in some evidence about how he was hired and what he was hired to do? I noticed the jury acquitted him on the conspiracy. They obviously didn't think he was involved with others. He was just a worker there. Who owned the land? That's the situation. He testified that he was hired to mow, water. He testified at trial? No, in a statement that came up. There are reasons that we didn't put Mr. Slater in. You don't even have to go into it because you have to go into it. What I'm saying is there was evidence presented at the trial of why he was there, who he had worked for. The fact that more should have been brought in, again, I don't think we can second guess what happened back there. We're stuck with what we have in our record. I submit that the record's sufficient that the government hasn't proved that he had any intent to manufacture the marijuana. He didn't testify. Of course, you can't draw an inference against him for not testifying. Exactly. There also are areas in the law where you can't take an inference from someone against them for not testifying. Still, if there's not proof of certain factors, they're going to lose. That's true, Your Honor, but his statement did come in to the police officers what he was doing on the property. Again, I think it comes down to is you have a worker on the property who's doing his job and what he was told. Sees the marijuana and says, for whatever reason, whatever. I'm not part of that. There was no evidence that, like the court's already indicated, the conspiracy charge had gotten acquitted on. The government attempted to tie him into Salvador, last name unknown, and other parties that were walking the property looking at this stuff, but they couldn't. It's hard for me to understand how the jury could acquit on the conspiracy charge, which would have been broader, quite easily more to convict on, and then to come back and say, well, he was a manufacturer. Except juries, I think, I could be wrong in this, but I think they're allowed to pick and choose. If they want to convict a guy on count A and let him off on count B, we can do that. They can do that. We normally don't say if there's evidence in the record Supporting count A, that because they let him off of count B, that's insufficient. I would agree with that, Your Honor. I would. But again, is it correct to convict Mr. Florio because he was working at the vineyard, said he was working there, and he didn't intend to manufacture? That's our position. Thank you, Your Honor. 5,300 plants weren't there. Yes, sir. There were a lot. And that's why he probably got a pretty steep sentence. He got 24 months, Your Honor. He was looking at a mandatory 120. Mandatory? Mandatory. And the judge reduced it to 24? Yes. Yeah. I'm sure the judge was wondering about, can you infer the intent to manufacture, which specific intent, from the evidence of knowledge? Okay. Thank you, Your Honor. Thank you. Good morning. May it please the Court, Alexander Exrum, on behalf of the Appellee, United States of America. I should first address Judge Wardlaw's question, which is, how do we get from the knowledge that there's marijuana to sufficiency of the evidence for the conviction? Right. Let's go, take me through your, the inferences. We just had this case in Begay that, you know, there's reasonable inferences that can be drawn, and then there's speculative inferences that are not permitted to be drawn. So, walk me through how we get, because here are the facts I have, that he was a farmhand and worked on the vineyard, that underneath the vineyard, the vines were lots and lots of marijuana plants. He knew it. He operated a tractor on the vineyard, and he ran away when he saw the agents. Okay, so are there any other facts that I'm missing? Your Honor, I believe some of them have previously been raised, and those are that, what the defendant originally indicated in his statement to Special Agent Petty was that an individual known only to him by his first name, Salvador, had directed him to come onto the property. There was a colloquy between Special Agent Petty and the defendant, which we would submit the jury was entitled to conclude was evasive regarding who Salvador was and why it was that he got to this property. Okay, all right, so we have unknown circumstances of hiring. So, walk me through. Two and a half weeks earlier, he goes to the property with specific directions to water, mow, and maintain. The only evidence in the record further defining maintain addressed, for instance, replacing fence posts. There's no further testimony. Maintaining the facilities. So, the government's contention to the court now and argument to the jury was that not only does he know what he's doing as he, over a two-week period, continues to apply water in the middle of summer to plants and watch them grow, but the application of water and maintenance of the vineyard provides cover for the marijuana plants that you're seeing every day as you drive down the road looking over the back of your tractor at the area that you're mowing. In addition, the jury received a video that showed the mowed areas with the marijuana. The jury saw the count of the marijuana plants and was able to compare that with Special Agent Vian's testimony that the marijuana plants were in three different conditions. There were the recently trimmed ones that were regrowing, the starters, and the more mature ones, showing that there was a process of these marijuana plants being harvested over time. So, he's there for two and a half weeks, and he's there for 11 hours a day. Each day, applying water, watching the plants grow. And the jury also heard Special Agent Petty's question to him, which he didn't want to answer, which is, how is it that someone you don't know sends you to a place with 5,300 marijuana plants and trusts you to be there for two and a half weeks? So, in this case, he knows what he's doing, just like if you went to someone's house and there was a tomato plant with a marijuana plant right next to it, on day one you water it. As time goes on and as you continue to water both plants, the presumption is stronger that you're, over time, not only intending to keep the tomato plant alive, but also the marijuana plant. Okay, so, all right. What also troubles me about this case, and I don't know what is in the record or not on this part, is you got the farm hand. How about the person who actually owned the land where the plants were growing and the person who sent him there? I mean, this is kind of problematic for me. It would probably not surprise the court to learn that we don't get everybody that we want. And that if the court's asking a question in equity, I would indicate that I believe the sentencing judge took that into account. Let me ask a question about precedent. I mean, I think if there's a problem that, like, Mr. Big doesn't get prosecuted and the worker B gets prosecuted, I can't really do anything much about that. But in terms of our circuit precedent, there have been several cases since you wrote your briefs. So, I want you to address, if you can, of course, the Begay opinion that Judge Wardlaw mentioned isn't yet cited. Oh, it isn't? Okay. Right? Isn't it just argued? Ah. Van Bank. I don't know if there's an opinion on Begay yet. All right. It may be under submission. That wasn't fair for me to ask you about it. But Nevels, there is a case where we have an opinion called U.S. v. Nevels. Nevels was a case where, like, a guy was found in an apartment building with a couple of guns on his lap. Yes, Your Honor. And the panel said, well, there might be an innocent, you know, he had an innocent explanation. These guys put them on my lap when I was asleep. Okay. Yes, Your Honor. The Van Bank panel reversed that, and they also overruled a case called Bishop where we had this sort of innocent explanation rule. And they said something like, under Jackson v. Virginia, the first stage of the analysis is you have to look at all the if the government's won and you're addressing sufficiency. So, like, I wanted to know if you were prepared to address this U.S. v. Nevels case or if it's gotten past you. It's pretty new. Your Honor, I was aware that it was, the decision was reversed on Bank, and I believe that that is further support to uphold this conviction. You know, the individual in that case was asleep when contacted with a gun on top of them. In this case, what the jury had before it was evidence that this individual was observing plants grow for two and a half weeks. Did you submit the videotape? I did. I submitted it as a supplemental excerpt of record. There were two videotapes, Exhibit 16 and Exhibit 14, which were marked as N3 and N4, respectively. Exhibit 16, N3, is a videotape of the plant count. The plants were bundled into bundles of 25 and loaded. That, the government believes, is important because the jury was able to see the differing sizes of the plants. Some of the bundles were quite large. Some of them were quite small. And also able to observe, shall we say, the extreme heat that was testified to by Special Agent Vian at that time of year. And that, again, goes to the defendant knowing that he is manufacturing. In the middle of summer, if you don't pour water on the plants, they're going to die in the Yakima Valley. What about the vines? Do they need water, too, in the middle of summer? They certainly do. Otherwise, one gets sagebrush. Otherwise what? One gets sagebrush. I don't have any further questions. Well, let me ask this. Isn't it possible that the defendant did not have possession over the contraband because it was the person who hired him or the foreman who had dominion and control over the drugs? It is possible that he did not have exclusive possession, although the evidence would show that for 11 hours, with very rare exceptions from his own statement, he was in exclusive possession. However, since the charge is manufacturing, we wouldn't have to show possession. The possession is here. In this instance, the government would contend confirmatory of his understanding of what he's doing, the fact that he's there. Is there a statutory definition that makes cultivating plants like marijuana manufacture? I do not believe that there is a statutory definition. I believe that we have to rely on the court's instruction to the jury. Okay. Nothing further, unless the court has questions of me. Okay. Thank you, counsel. United States v. Solori of Valdez. Could I ask one question about counsel? Sure. Yes, sir. Putting you back on stage. I just want to know if you are in a position to address and distinguish Nevils. I think Nevils goes a long way to make your at-the-start very difficult appeal even more difficult. It does, Your Honor. Am I prepared to analyze it today? Not today. If the court wishes additional supplemental briefing, I will certainly do that. I do think that this case is a very troubling case on both sides. Why don't we – why don't counsel, since neither one of you briefed Nevils, the Nevils standard in construction of Jackson v. Virginia, why don't you submit supplemental letter briefs on that? A reasonable time would be ten days from today. Would that be right? All right. Is that fine? Okay. Good idea. All right. Thank you. Should we take a brief briefing? Let's take a break now or after the next one. Okay. Let's take a break now. Okay. The court will be in recess for a few minutes. Thank you.
judges: Mills, Wardlaw, Gould